# CV 09 3729

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————X

ANGELA MOTTAHEDEH, as Trustee,
of the Trust Agreement dated November 8, 1993,

Plaintiff,

-against-

THE UNITED STATES OF AMERICA,

Defendant.

——————————————————X

**FILED**
IN CLERK...
U S DISTRICT COURT E.D.N.Y

**COMPLAINT**   AUG 2 7 2009   ★

Case No.   LONG ISLAND OFFICE

Date Filed:   **BIANCO, J.**

# TOMLINSON, M

Plaintiff, ANGELA MOTTAHEDEH, as Trustee of the Trust Agreement dated November 8, 1993, by her attorneys, Dollinger, Gonski & Grossman, complaining of the defendant, the UNITED STATES OF AMERICA, respectfully shows to this Court and alleges as follows:

## AS AND FOR A FIRST CAUSE OF ACTION

1.    ANGELA MOTTAHEDEH, as Trustee, is a resident of the County of Nassau, State of New York.

2.    Defendant, the UNITED STATES OF AMERICA, is a defendant by virtue of certain actions taken by the Internal Revenue Service ("IRS") which is a governmental agency.

3.    This action arises under 26 U.S.C. 7426 and 28 U.S.C. 1331 for the reason that it involves a wrongful levy by the UNITED STATES OF AMERICA.

4.    This wrongful levy claim is timely filed within nine months of the subject levy, pursuant to 26 U.S.C. §6532(c).

5.    Plaintiff is, and at all times since June 3, 1998 has been, the sole owner, as Trustee, of nineteen shares of common stock of Old Cedar Development Corporation (the "Old

1

Cedar Stock") transferred to plaintiff, ANGELA MOTTAHEDEH, as Trustee, by Parviz Lavi ("Lavi").

6.      The UNITED STATES claims that it has a lien against the Old Cedar Stock for the payment of a tax liability allegedly owed by Lavi for the tax period ending December 31, 1978.

7.      On or about August 26, 2003, the IRS issued a Notice of Federal Tax Lien, which was filed in the Office of the Clerk of Nassau County on September 2, 2003, indicating that Lavi had been assessed $147,861.91 on the assessment date, December 1, 1992, for 1040 taxes for the tax period ending December 31, 1978. A copy of the filed Notice of Federal Tax Lien is annexed hereto as Exhibit "A".

8.      On or about February 11, 2009, the IRS served a Notice of Levy dated February 9, 2009 on plaintiff claiming that the levy attached to, and required plaintiff to turn over to the UNITED STATES, the Old Cedar Stock (see Exhibit "B").

9.      By letter dated August 19, 2009, the UNITED STATES advised counsel for the plaintiff that the Old Cedar Stock is now in the possession of the UNITED STATES and that the IRS intends to proceed with administrative sale proceedings (see Exhibit "C").

10.     The Old Cedar Stock levied upon and seized by the UNITED STATES is not now and has not been at any time since June 2, 1998 the property of Lavi and Lavi does not have and has not had at any time relevant hereto, any interest in the Old Cedar Stock.

11.     On May 1, 1990, Old Cedar Development Corp. issued the Old Cedar Stock to Lavi.  A copy of the stock certificate is annexed hereto as Exhibit "D".

2

12.     In 1993, a Trust Agreement dated November 8, 1993 was entered into between ANGELA MOTTAHEDEH and Lavi. A copy of the Trust Agreement is annexed hereto as Exhibit "E".

13.     Pursuant to the Trust Agreement, ANGELA MOTTAHEDEH was appointed Trustee for the benefit of Edmond Lavi, Edward Lavi and ANGELA MOTTAHEDEH and a Trust Account was established with the firm of Bear Stearns (see Exhibit "F" annexed hereto).

14.     Lavi, under the terms of the Trust Agreement had (i) no right to revoke, terminate or modify the Trust Agreement, and (ii) no interest in the principal or income of the Trust Fund (see Exhibit "E").

15.     Pursuant to the terms and provisions of the Trust Agreement, substantial funds were deposited into the Trust Account.

16.     In 1993, Lavi borrowed the sum of $1,140,000.00 from the Trust, at an interest rate of 10% per annum, computed from December 31, 1993 (the "Loan") (see Exhibit " G").

17.     By agreement made the 26th day of June, 1997, between Lavi and the plaintiff, Lavi acknowledged his indebtedness to the plaintiff in the sum of $1,140,000.00 plus interest in the sum of 10% from December 31, 1993 (see Exhibit "G").

18.     By agreement made June 2, 1998, in consideration for the cancellation of Lavi's obligation to repay the loan, Lavi assigned his entire right, title and interest in the Old Cedar Stock to the plaintiff under the Trust Agreement and a Stock Power was issued to the plaintiff (see Exhibit "H" annexed hereto).

3

19.     In 1998, Lavi's attorneys wrote to the attorneys for Old Cedar Development Corp. and asked them to transfer the Old Cedar Stock to the plaintiff (see Exhibit "I" annexed hereto).

20.     Old Cedar Development Corp. transferred ownership of the Old Cedar Stock to the plaintiff and noted the transfer in the books and records of Old Cedar Development Corp. (see Exhibit "J").

21.     The Old Cedar Stock does not belong to Lavi, the taxpayer against whom the IRS levy originated.

22.     Lavi has no interest in the Old Cedar Stock levied upon.

23.     The Old Cedar Stock was wrongfully seized.

24.     Plaintiff is the owner of the Old Cedar Stock free and clear of any claim by Lavi and the UNITED STATES.

25.     Therefore, plaintiff requests judgment releasing the levy on the Old Cedar Stock and ordering defendant to return the Old Cedar Stock to plaintiff, and for costs.

## AS AND FOR A SECOND CAUSE OF ACTION

26.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "24" of this Complaint as if same were more fully set forth at length herein.

27.     Defendant, the UNITED STATES, alleges that it has a right to the Old Cedar Stock.

4

28.    Plaintiff, ANGELA MOTTAHEDEH, as Trustee, claims to be entitled to ownership of the Old Cedar Stock free and clear of any claim by the UNITED STATES.

29.    There is clearly a justiciable controversy which is ripe for adjudication.

30.    Judgment of this Court is sought to determine the rights of the parties with respect to (a) the ownership of the nineteen shares of stock of Old Cedar Development Corp., and (b) that petitioner, ANGELA MOTTAHEDEH, as Trustee, is the owner of the shares of stock free and clear of the claims made by the UNITED STATES.

31.    Plaintiff has no adequate remedy at law.

WHEREFORE, plaintiff demands judgment as follows:

(a)    On the First Cause of Action that a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction be issued in favor of the plaintiff and against the defendant enjoining and prohibiting the defendant from seizing the Old Cedar Stock and maintaining levies against the Old Cedar Stock and directing defendant to release the levy on the Old Cedar Stock and ordering the defendant to return the Old Cedar Stock to the plaintiff, and for costs and attorneys' fees as provided under 26 U.S.C. §7430, and for such other and further relief as to this Court seems just and equitable, and

(b)    On the Second Cause of Action declaring the rights of the parties hereto with respect to the ownership of the Old Cedar Stock, declaring that the plaintiff is the owner of the Old Cedar Stock free and clear of the claims made by the UNITED STATES, directing that the Notice of Levy issued by the UNITED STATES be vacated and cancelled and directing the

5

kt/10444Complaint.wpd

UNITED STATES to release the levy on the Old Cedar Stock and return the Old Cedar Stock to the

plaintiff, together with the costs and disbursements herein, and for such other and further relief as

to this Court may seem just, proper and equitable under the circumstances.

Dated: Carle Place, New York
     August 26, 2009

                                    DOLLINGER, GONSKI & GROSSMAN
                                    Attorneys for Plaintiff,
                                    ANGELA MOTTAHEDEH, as Trustee

By:                                       

                                    MATTHEW DOLLINGER, ESQ. (0647)
                                    One Old Country Road, Suite 102
                                    P. O. Box 9010
                                    Carle Place, New York 11514-9010
                                    (516) 747-1010
                                    email: dgglaw@dggny.com

6

EXHIBIT
A

FROM :

## NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 09-02-2003          Record and Return To:
Recorded Time:   3:50:15 p

    Liber Book:
    Pages From:
          To:

     Control
     Number:  1788
      Ref #: FT  122462
  Doc Type: L01   FEDERAL TAX LIEN

Plnt: INTERNAL REVENUE SERVICE-MANHATTAN DISTRICT
Dfnd: LAVI, PARVIZ

Judgment Amount:      147,861.91

|                | Taxes Total    | .00   |
|----------------|----------------|-------|
|                | Recording Totals | 40.00 |
| MET001         | Total Payment  | 40.00 |

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
KAREN V. MURPHY
COUNTY CLERK



20030902017 88





| Form 668 (Y)(c) (Rev. October 2000) | 1646 | Department of the Treasury - Internal Revenue Service **Notice of Federal Tax Lien** |
|---|---|---|

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #2 Lien Unit Phone: (212) 719-8239 | Serial Number 131639803 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer PARVIZ LAVI

Residence     10 AUSEREHL CT
              HUNTINGTON, NY 11743-2270

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1978 | | 12/01/1992 | N/A | 147861.91 |

| Place of Filing |  |  |
|---|---|---|
| Nassau County Clerk Nassau County Mineola, NY 11501 | Total | $  147861.91 |

This notice was prepared and signed at _____MANHATTAN, NY_____ , on this,

the ___26th___ day of ___August___ , ___2003___ .

| Signature *Marlene Sudano* for MARLENE SUDANO | Title SPF ADVISOR (718) 488-2835 | 22-97-6740 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 10-00) CAT. NO 60025X

EXHIBIT

B

| Form 668-A(ICS) | Department of the Treasury – Internal Revenue Service |
|---|---|
| (Rev. July 2002) | **Notice of Levy** |

| DATE: 02/09/2009 | TELEPHONE NUMBER |
|---|---|
| REPLY TO: Internal Revenue Service | OF IRS OFFICE: (631)851-4984 |

REPLY TO:  Internal Revenue Service
         **JACK SMILOFF**
         **1180 VETERANS MEMORIAL HWY**
         **HAUPPAUGE, NY 11788**

NAME AND ADDRESS OF TAXPAYER:
**PARVIZ LAVI**
**21 OVERBROOK LANE**
**GLEN HEAD, NY 11545-2795**

TO: **ANGELA MOTTAHEDEH, TRUSTEE AS**
      **THE TRANSFEREE OF PARVIZ LAVI**
      **(SEE NOTE BELOW)**
      **31 BEVERLY ROAD**
      **GREAT NECK, NY 11021-1319**

IDENTIFYING NUMBER(S):  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

**LAVI**

**Note: This levy attaches to, and requires you to turn over to the United States all property on which there is a lien for the payment of the tax liability reference above. This property includes the 19 Shares of Old Cedar Development Corporation transferred to you as Trustee by Parviz Lavi.**

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/1978 | 120016.33 | 87206.16 | 207222.49 |

| THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ⇒ | Total Amount Due | 207222.49 |
|---|---|---|

We figured the interest and late payment penalty to   **03-10-2009**

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code **must hold your money for 21 calendar days** before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have (or are already obligated for) when they would have paid you.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

| Signature of Service Representative | Title |
|---|---|
| /S/ JACK SMILOFF | REVENUE OFFICER    11-09052 |

Part 2 –   For Taxpayer    631- 851-4984          Form 668-A(ICS) (7-2002)

EXHIBIT

C

# FAX COVER SHEET

## INTERNAL REVENUE SERVICE

**OFFICE OF DIVISION COUNSEL
(SMALL BUSINESS/SELF-EMPLOYED)**
1600 Stewart Avenue, Suite 601
Westbury, New York 11590-6692
(516) 688-1701, 1702
FAX: (516) 688-1750, 1751



| | | | |
|---|---|---|---|
| **Date Sent:** | AUG 1 9 2009 | **Pages Sent:** | 3 (Counting Cover) |
| **Deliver To:** | Matthew Dollinger, Esq. | **FAX Number:** | (516) 747-2494 |
| **Organization:** | Dollinger, Gonski & Grossman | **Phone Number:** | (516) 747-1010 |
| **Sender:** | James P.A. Caligure General Attorney (Long Island, Group 1) | **FAX Number:** | (516) 688-1750 |
| **Office:** | Small Business/Self-Employed | **Phone Number:** | (516) 688-1736 |
| **Sent by:** | _____ | **Time:** | _____ |

### THIS DOCUMENT IS INTENDED ONLY FOR THE NAMED ADDRESSEE.

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone, and return the communication to the address above via the United States Postal Service. Thank you.

**COMMENTS:** Please see attached correspondence. If you have any questions or concerns please feel free to contact me. Thank you.



**OFFICE OF
CHIEF COUNSEL**

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
OFFICE OF DIVISION COUNSEL
SMALL BUSINESS/SELF-EMPLOYED
1600 STEWART AVENUE, SUITE 601
WESTBURY, NEW YORK 11590-6692
(516) 688-1701, 1702
FAX: (516) 688-1750, 1751

**AUG 1 9 2009**

CC:SB:1:LI:1:JPCaligure
GL-151648-08

**Via Facsimile**

Matthew Dollinger, Esq.
One Old Country Road
Suite 102
P.O. Box 9010
Carle Place, New York 11514-9010

**Re: Angela Mottahedeh, Trustee**

Dear Mr. Dollinger:

Reference is made to our letter, dated June 4, 2009, in which we asked you to
provide to our office, before June 8, 2009, a copy of a proposed escrow agreement for
the 19 re-issued shares in the name of Angela Mottahede, as Trustee, of Old Cedar
Development Corporation. The escrow was at your request, and the June 4, 2009 letter
was not our first request for the draft agreement. In that same letter we informed you
that we would assume your client no longer wished to honor the terms of our April 4,
2009 understanding, where you proposed to hold the shares in escrow if the parties
could agree to appropriate terms.

In response to additional telephonic requests for a draft agreement, on June 12,
2009, your partner, Floyd Grossman, telephoned our offices and stated that he would
send an escrow agreement to our office. (We did not receive a proposed agreement.)
Given our June 4, 2009 letter to your office and the failure to make any progress in
implementing an escrow arrangement, we advised the IRS to proceed with the seizure
of the shares by serving a Notice of Levy on the Corporation.

The re-issued shares are now in the possession of the United States, and the IRS will proceed with administrative sale proceedings. If you have any questions regarding this matter, please contact the undersigned at (516) 688-1736.

Sincerely,

FRANCES F. REGAN
Area Counsel
(Small Business/Self-Employed: Area 1)

By:

James P.A. Caligure
General Attorney (Long Island, Group 1)
(Small Business/Self-Employed)

cc: Jack Smiloff, Revenue Officer

EXHIBIT

D



*In presence of*

_____

_____
*Dated,*

*tion with full power of substitution in the premises.*

Attorney to transfer the said shares on the books of the within-named Corpora-

*and appoint*

*represented by the within Certificate, and do hereby irrevocably constitute*

*Shares*

_____

_____

PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF ASSIGNEE

*hereby sell, assign and transfer unto*

*For value received*

Additional abbreviations may also be used though not in the above list.

| | |
|---|---|
| TEN COM | — as tenants in common |
| TEN ENT | — as tenants by the entireties |
| JT TEN | — as joint tenants with right of survivorship and not as tenants in common |

UNIF GIFT MIN ACT— _____ Custodian, _____
(Cust)          (Minor)
under Uniform Gifts to Minors
Act _____
(State)

The following abbreviations, when used in the inscription on the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations.

NOTICE: THE SIGNATURE TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATEVER.

October 4, 1999
Received from Angelo Mottahedeh
original of Certificate No. 17 for
19 shares of common stock of Old
Cedar Development Corporation to Transfer
By Angela Mottahedeh, on the books
By the corporation.

[signatures]

EXHIBIT

E

JAN 06 '99 12:51   TO:7472494          FROM:ALLIED DYNAMICS CORP T-455 P. 05

COPY

TRUST AGREEMENT

Dated          *Nov 8*          , 1993

between

PARVIZ LAVI, Settlor

and

ANGELA MOTTAHEDEH, Trustee

LANE & MITTENDORF

JAN 06 '99 12:52   TO:7472494      FROM:ALLIED DYNAMICS CORP T-455 P.05

TRUST AGREEMENT, dated *Nov 8*, 1993, between PARVIZ LAVI, of Huntington, N.Y., as settlor, and ANGELA MOTTAHEDEH of Brookville, New York, as trustee.

The settlor hereby conveys, assigns and transfers to the trustee and her successors in office the property described in Schedule A annexed to this Agreement, the receipt of which property the trustee hereby acknowledges;

TO HAVE AND TO HOLD the same unto the trustee and her successors in office;

IN TRUST. NEVERTHELESS, for the uses and purposes and upon the terms and conditions hereinafter set forth.

### ARTICLE FIRST

The trustee shall invest and reinvest the trust fund during the "trust term," which shall terminate upon the death of the settlor.

(A)  During the life of the settlor, the trustee shall pay so much of the net income and principal of the trust fund to or for the use of such one or more members of a class composed of the settlor's issue living from time to time during the trust term, as the trustee in her sole and absolute discretion, deems appropriate for the health, education, and support in reasonable comfort of such issue, or to enable such issue to maintain his or her accustomed standard of living; provided, however, that after the creation of the trust or after an addition shall be made to the trust, no such distribution of principal shall be made without the

WIN:LS/LAVI-TFT.AGR

consent of each person who has a power of withdrawal, as provide

in Article SECOND of this Agreement, until the expiration of th

time for the exercise of each power of withdrawal which result

from such creation or addition.   The trustee shall accumulate an

balance of such net income and add it to principal of the trus

fund.

(B)   (1)   Upon the death of the settlor the principal o

the trust shall be distributed to the settlor's then livin

children in the following percentages:

1)   Forty (40%) percent to EDWARD LAVI;

2)   Forty (40%) percent to EDMUND LAVI;

3)   Twenty (20%) percent to ANGELA MOTTAHEDEH.

If any of settlor's children predecease the settlor, hi

or her share shall be payable to settlor's surviving children i

the same relative proportions.

(C)   If at any time the trustee other than an

beneficiary hereunder determines either that continuation of

trust created hereunder is neither necessary nor desirable in th

interests of the beneficiaries of the trust or that continuation o

the trust is unwarranted in view of the size of the trust fund, th

trustee may terminate the trust by distributing the entir

principal thereof to the children of the settlor then living

without further accountability therefor to anyone; provided

however, that after the creation of the trust or after an additio

shall be made to the trust no such distribution shall be mad

without the consent of each person who has a power of withdrawal

NW/WILLS/LAVI-TST.AGR                  -2-

ded

the

lts

any

ust

of

ing

his

in

any

: 1

the

of

the

ire

ng,

ad,

ion

ade

al,

as provided in Article SECOND of this Agreement, until the
expiration of the time for the exercise of each power of withdrawal
which results from such creation or addition.

(D)  All distributions of income and principal pursuant
to the provisions of this Article shall be at such times and in
such amounts or proportions, equal or unequal, as the trustee in
her sole and absolute discretion, deems appropriate for the health,
education, and support in reasonable comfort of such distributee,
or to enable such distributee to maintain his or her accustomed
standard of living.  Such trustee may omit from participation in
any such distribution any one or more of the persons among whom
such distribution could be made.

### ARTICLE SECOND

(A)  Notwithstanding the provisions of Article FIRST of
this Agreement, during the calendar year 1993 each child of the
settlor living at the time of the execution of this Agreement shall
have the power, by an instrument signed and acknowledged and
delivered to the trustee, in his or her sole discretion, commencing
with the date hereof, to withdraw at any one time an amount from
the principal of the trust not exceeding the lesser of (1) $10,000
or (2) the value of all property contributed to this trust during
calendar year 1993, divided by the number of individuals having a
power of withdrawal on the date of creation of this trust.  If an
addition is made to the trust in a calendar year after 1993, each
child of the settlor living at the time of such addition shall have
the power by an instrument signed and acknowledged and delivered to

:W/WILLS/LAVI-TST.AOR                   -3-

the trustee, in his or her sole discretion, commencing with the date of addition, to withdraw at any one time an amount from the principal of the trust (including the property comprising the principal of the trust immediately prior to such addition and the property constituting the addition) not exceeding the lesser of (1) $10,000 or (2) the value of the addition divided by the number of individuals having a power of withdrawal immediately after the time of addition; provided that the individual making the addition shall have the right by a written instrument filed with the trustee at the time of such addition (but with respect to such addition only): (i) to exclude any individual who would otherwise have a power of withdrawal from exercising the power, (ii) to increase or decrease the amount subject to any power of withdrawal, except that the amount subject to all withdrawal powers shall not exceed the amount of the addition, and (iii) to change the period during which any power of withdrawal may be exercised.

(B)  (1)  Promptly after the creation of the trust or after an addition shall be made in a calendar year after 1993, the trustee shall notify in writing each person having a withdrawal power of the existence of the power, except that in the case of any such person who is under a legal disability, notification shall be given to his or her legal guardian or, if none, either to a parent of an infant or to another individual, as the trustee deems appropriate.  The power of withdrawal granted to each power holder shall terminate 60 days after such holder receives notification of the existence of the power, except to the extent that such period

is changed pursuant to clause (iii) of Subdivision (A) above, but only to the extent of the greater of $5,000 or five percent of the then value of the property from which such power may be executed.

(2)   The powers of withdrawal created by this Article shall be cumulative, provided that on December 31 of each year the total amount which may be withdrawn by each power holder shall be reduced (but not below zero) by (a) the greater of $5,000 or five percent of the value of the trust principal on that date, less (b) any amount added to the trust in that calendar year or in the preceding calendar year which was either withdrawn by such power holder in that calendar year or over which such power holder's right of withdrawal has terminated in that calendar year, provided, that no power of withdrawal arising by virtue of an addition to the trust shall be reduced pursuant to this paragraph (2) until after the expiration of the 60-day period referred to in paragraph (1).

(3)   The determination by the trustee of the amount subject to any power in existence under this Article shall be final and conclusive on all beneficiaries of the trust fund.  The trustee shall not incur any liability to any such beneficiary as a result of such determination.

### ARTICLE THIRD

If the trust fund includes insurance on the life of the settlor, then upon the death of the settlor, the trustee shall take all necessary steps to collect the proceeds of said policies of insurance, and to that end shall have full power to furnish

MW/WILLS/LAVI-TST.AGR                -5-

necessary proofs of death, to execute and deliver receipts a

releases, to institute suit upon any such policy, to compromise

adjust any claim, and to do and perform any and all other ac

necessary for the collection of amounts payable under any su

policy, provided, however, that the trustee shall be under

obligation to institute litigation to enforce payment of sa

policies unless it is advisable in the opinion of her counsel an

unless adequate funds of the trust, whether principal or income

are available to her to pay the costs and expenses thereof

including attorneys' fees, or she shall have been indemnified t

her satisfaction against all costs, expenses and liabilities i

which she, in her judgment, may be involved.

### ARTICLE FOURTH

If, under any of the provisions of this Agreement, an

amount, whether of income or of principal, shall become

distributable to a person who has not attained the age of twenty-

one (21) years, the trustee, if and to the extent that she deems it

advisable so to do, in her sole discretion, may retain all or any

part of such amount as a separate fund under a power in trust for

the benefit of such person. The trustee shall invest and reinvest

any fund so retained, add to such fund any net income therefrom,

and pay to such person so much, if any, of such fund from time to

time as she, in her absolute discretion, deems appropriate for the

maintenance, education and support of such person. When such

person attains the age of twenty-one (21) years, such fund shall be

paid over to him. If such person dies before attaining that age,

such fund shall thereupon be paid over to his estate.

## ARTICLE FIFTH

(A) In addition to, and without in any way limiting, any powers or authority which the trustee from time to time in office hereunder would have in the absence of this Article, the trustee is authorized, in respect of the property held hereunder, at any time and from time to time and in her absolute discretion:

(1) to sell any property at either public or private sale for cash or on credit of any duration;

(2) to invest and reinvest in such securities or other property, real or personal and at any place in the United States of America or abroad, as they determine in their discretion; to exchange any property upon such terms as they deem advisable and to retain any property at any time received or held by them for such periods as they determine in their sole discretion whether or not the same be income-producing;

(3) to employ legal counsel, accountants, brokers and other agents or employees and, if no corporate trustee is in office hereunder, investment advisors and custodians, and to pay to them such compensation from the trust fund as the trustees deem reasonable without in any way affecting the commissions or other compensation to which the trustees may be entitled;

(4) to borrow money from any person, including any trustee in office hereunder, in the name of any trust created hereunder, and to secure the repayment thereof by mortgage or pledge of any property held in such trust;

(5) to apply for the benefit of any person any amount, whether of income or of principal, which under any of the other provisions of this Agreement could be paid directly to him;

(6) without the consent of any beneficiary, to make any payment, division or distribution of income or of principal in kind or in money, or partly in each, and to do so without regard to the income tax basis of specific property allocated to any beneficiary and without making pro rata distribution of specific assets;

NW/WILLS/LAVI-TST.AGR                              -7-

(7)   to pay any amount, whether of income or of principal, which under any provisions of this Agreement could be paid to any minor or person under disability (a) to such minor or person under disability, (b) to a custodian for such minor under the Uniform Gifts to Minors Act of the appropriate state (with or without any applicable "until age twenty-one" election), (c) to the guardian of the person or property of such minor or the committee or conservator of such person under disability, or (d) to the extent that the settlor can effectively authorize such action, to any adult with whom such minor or person under disability shall reside, in any such case without requiring the recipient to qualify in any jurisdiction as donee of a power in trust or in any other capacity or to post any bond or other security;

(8)   to manage any real property in the same manner as if the absolute owner thereof, and to lease or grant options to lease any such real property for any term or terms although in excess of any period permitted by law and although any such term may extend beyond the period of the trust created hereunder and to enter into any covenants or agreements relating to the property so leased or any improvements which may then or thereafter be erected thereon; to make ordinary and extraordinary repairs and alterations to any building, to raze old buildings, to erect new buildings and to make other improvements; to abandon any or all of such property; to subdivide and plot any such real property; to lay out and dedicate streets, ways and public places, and to square lines; to make partition or enter into any agreements of partition of any real property which, or an interest in which, at any time constitutes part of any trust hereunder even though the fiduciary so partitioning such real property may hold an interest in the same property individually or in any other capacity, and to give or receive money or other property for equality of partition;

(9)   to maintain reasonable reserves from income for depreciation or depletion of any property;

(10)  to conduct the sale, purchase or any other transaction relating to any trust property through any firm or corporation whether or not any fiduciary in office hereunder is an officer, director, member or employee of such firm or corporation or shall have any interest therein and to pay the usual commission or other reasonable compensation to such firm or corporation payable by an independent third party;

(11)   to allocate to principal, or to income, or partly to each, receipts of any kind, including (but not by way of limitation) liquidating dividends, dividends from corporations with wasting assets or royalties or rents from wasting assets; and to charge either to principal or to income, or in part to each, any administration or other expense paid or loss incurred, as they deem equitable, having due regard for the interests of all beneficiaries affected by such allocation or charge;

(12)   to become a partner, either general or limited, in any partnership;

(13)   to divide property in any trust hereunder with an inclusion ratio, as defined in Section 2642(a)(1) of the Code, of neither one nor zero into two separate trusts representing two fractional shares of the property being divided, one to have an inclusion ratio of one and the other to have an inclusion ratio of zero;

(14)   to make loans from the trust assets to any beneficiary with or without security therefor and with or without requiring the payment of any interest;

(15)   to terminate any trust by paying the principal of such trust to the then income beneficiary or beneficiaries thereof if the trustees are of the opinion that continuation of the trust is neither necessary nor desirable, or that continuation of the trust is unwarranted in view of the small size of the trust fund; and

(16)   generally to exercise in respect of any property any power which an absolute beneficial owner of such property would have.

(B)   With respect to any discretionary power granted to the trustee in this Agreement to distribute or to allocate or accumulate income or principal or to make loans or to terminate a trust:

(1)   if at any time a person or a member of a class of persons in whose favor such a power may be exercised with respect to the trust created under this Agreement is a trustee of such trust, such power shall be exercised with respect to such trust, if at all, only by the other trustees at the time in office;

WW/WILLS/LAVI-TST.AGR                    -9-

(2)   if at any time a person having a beneficial interest in any trust hereunder (other than a beneficial interest described in Paragraph(1) of this Subdivision) is a trustee of such trust, such power shall be exercised only by the trustees not having a beneficial interest in such trust, or if there are no trustees in office not having a beneficial interest in such trust, such power may be exercised by the trustees then in office, in their discretion, but only for the health, education, and maintenance in reasonable support and comfort of any beneficiary to enable any beneficiary to maintain his or her accustomed standard of living or to enable any beneficiary to meet emergencies;

(3)   if at any time any property shall become subject to the trust under this Agreement as a result of a renunciation by any person, such power shall thereafter be exercised with respect to such trust, if at all, only by the trustees in office other than such person; and

(4)   no such discretionary power shall in any case be exercised to relieve any person of an obligation of support or other personal obligation.

(C)   If, at any time or from time to time, the individual in office as trustee of the trust created hereunder, in her absolute discretion and for any reason whatsoever, deems it advisable, she may transfer the situs of such trust to any jurisdiction within The United States of America, and such trust shall thereafter be administered in, and in accordance with the procedural laws of, such other jurisdiction.

(D)   Each trustee who determines it to be in the best interest of any beneficiary may at any time, by acknowledged instrument filed with the trust records, release upon any terms, either in whole or in part, temporarily or permanently, revocably or irrevocably, with or without binding successors, any one or more of the powers, rights, authorities, or discretions conferred upon the trustee by any provision hereof or generally pursuant to law.

if the release of a power, right, authority, or discretion is made
by fewer than all of the trustees upon whom it is conferred, such
power, right, authority, or discretion shall continue to be
exercisable in full by the other trustees who have not released it.

## ARTICLE SIXTH

(A) Any adult individual (other than the settlor, or any
person who has contributed property to the trust) or any bank or
trust company may at any time be appointed as an additional or a
successor trustee of any trust created hereunder by an instrument
signed and acknowledged by a majority of the settlor's then living
children such appointment to take effect at such time and subject
to such conditions as may be set forth in the instrument by which
such appointment is made.

(B) A majority of settlor's children may at any time
transfer the power to appoint or to remove a trustee under the
foregoing Subdivisions of this Article to any person or series of
persons by an instrument signed and acknowledged and delivered to
such transferee or to any one or more of such transferees.

(C) No trustee at any time in office hereunder shall be
required, in any jurisdiction, to furnish a bond or other security,
to render any annual or other periodic accountings or to obtain the
approval of any court before applying, distributing, selling or
otherwise dealing with any property.   No one dealing with any
trustee need see to the application of any money paid or property
transferred to the Trustees or upon their order.

NW/WILLS/LAVI-TST.AGR                       -11-

  (D) Any individual co-trustee of any trust creat
hereunder may at any time resign as such trustee, without approv
of any Court, by delivering an instrument of resignation, sign
and acknowledged by such trustee, to the other trustees or trust
of such trust at the time in office.

  (E) If Angela Mottahedeh shall die or cease to act
trustee for any reason, settlor appoints EDWARD LAVI as success
trustee.

### ARTICLE SEVENTH

  Any person other than a beneficiary of this trust m
add to the property held in trust hereunder by delivering
transferring property to the trustee, by having the proceeds of a
insurance policy or the principal of any other trust made payab
to the trustee or by bequest or devise by Will; provided, howeve
that any such addition shall be acceptable to the trustee.   T
trustee shall allocate to income all accrued interest and dividen
declared and of record but unpaid at the time of delivery to t
trustee of securities added to any trust hereunder.

### ARTICLE EIGHTH

  (A) In any proceeding relating to any trust create
hereunder service upon any person under a disability shall not b
made when another person not under a disability is a party to th
proceeding and has the same interest as the person under th
disability.

SM/WILLS/LAVI-TST.AGR    -12-

JUN 06 '99 12:57   TO:7472494   FROM:ALLIED DYNAMICS CORP T-455 P.78

(B) At any time, and from time to time, the trustee in office hereunder may settle her accounts as trustee of any trust created hereunder either in court or by an agreement in writing with the following persons:  (1) the persons aged eighteen (18) years or older who shall be beneficiaries or possible beneficiaries of the income of such trust at the time of such written agreement, and (2) the persons aged eighteen (18) years or older who would be entitled to a share of the principal of such trust if it were to terminate at the time of such written agreement.  Any such written agreement shall be final and binding upon all persons who may then be, or thereafter become, entitled to any part of the income or principal of such trust and shall have the same force and effect in discharging the trustee as a decree of a court of competent jurisdiction; provided that any such written agreement shall not enlarge or shift any beneficial interests under such trust.

## ARTICLE NINTH

If the order of deaths of any income beneficiary and remainderman of any trust established by this Agreement cannot be established by proof, for all purposes of this Agreement such income beneficiary shall be conclusively presumed to have survived such remainderman.

## ARTICLE TENTH

Wherever used in this Agreement, except as the context clearly requires otherwise:

(1) the terms "child", "children", or "issue" mean a child, children, or issue born in marriage and shall include an adopted child or adopted issue as if born in marriage to his or her adopting parents, but only if such adoption becomes effective before such    person attains the age of eighteen (18) years;

(2)  the term "per stirpes" with reference to the issue of any individual means that the stocks begin with the children of such individual and that no distribution at any generational level shall be per capita;

(3) the term "trustee" or "trustees" refers to the trustee or trustees then in office hereunder;

(4) the term "trust fund" means (i) the property listed on Schedule A annexed hereto, (ii) any additional property which may be added to the trust and (iii) the property for the time being and from time to time representing the property listed in Schedule A annexed hereto and the additional property;

(5) the use herein of any gender shall be deemed to include the other genders, and the use of either the singular or the plural shall be deemed to include the other; and

(6) any reference to the "Code" shall mean the Internal Revenue Code of 1986, as amended, any generally similar provisions of the Internal Revenue Code which shall be in effect from time to time and any generally similar provision of the law of any State.

W/WILLS/LAVI-TST.AGR                   -14-

### ARTICLE ELEVENTH

This Agreement is delivered to and accepted by the trustee in the State of New York. Unless the situs of any trust created hereunder is moved, pursuant to the provisions of Article FIFTH or by court order, the trust created hereunder shall be a New York trust, shall be administered in accordance with the laws of that State, and this Agreement shall be construed, and the validity and effect of the provisions hereof shall be determined, in accordance with such laws.

### ARTICLE TWELFTH

The trustee, by joining in the execution of this Agreement, signifies her acceptance of the trust created hereunder upon the terms set forth herein.

### ARTICLE THIRTEENTH

This Agreement shall be irrevocable and shall take effect immediately upon the execution of this Agreement by the settlor and the trustee. The settlor shall not have any right or power, either alone or by action jointly with others, to revoke, terminate or modify this Agreement or any of the provisions hereof in any manner whatsoever. Neither the settlor nor any other person contributing property to this trust shall have any interest, either vested or contingent, including reversionary interests, which he or she might otherwise be held to have in either the income or the principal of the trust fund.

\\WILLS\LAVI-TST.AGR                    -15-

JAN 06 '99 12:59   TO:7472494          FROM:ALLIED DYNAMICS CORP T-455 P.41

IN WITNESS WHEREOF, the undersigned individuals have hereunto set their hands and seals as of the day and year first above written.

_____   Nov. 8-1993   L.S.
Parviz Lavi, settlor

_____   L.S.
Angela Mottahedeh, trustee

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of __California__

County of __Los Angeles__

On __11-12-93__ before me, __Hilda Haigazian, A Notary Public__
DATE                               NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared __Parviz Lavi ★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★__
NAME(S) OF SIGNER(S)

☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
SIGNATURE OF NOTARY

OFFICIAL SEAL
HILDA HAIGAZIAN
NOTARY PUBLIC - CALIFORNIA
NOTARY BOND FILED IN
LOS ANGELES COUNTY
My Commission Expires December 17, 1993

OPTIONAL SECTION
CAPACITY CLAIMED BY SIGNER
Though statute does not require the notary to fill in the data below, doing so may prove invaluable to persons relying on the document.

☒ INDIVIDUAL
☐ CORPORATE OFFICER(S)
                              TITLE(S)
☐ PARTNER(S)   ☐ LIMITED
               ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER _____

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)

OPTIONAL SECTION

THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT:

Though the data requested here is not required by law, it could prevent fraudulent reattachment of this form.

TITLE OR TYPE OF DOCUMENT __Trust Agreement__

NUMBER OF PAGES __18__   DATE OF DOCUMENT _____

SIGNER(S) OTHER THAN NAMED ABOVE __Angela Mottahedeh__

©1992 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA

SN/WILLS/LAVI-TST.AGR                   -16-

## SCHEDULE A

### Annexed to Trust Agreement, dated _____, 1993

$100.00 in cash

NW/WILLS/LAVI-TST.AGR

EXHIBIT

F

**BEAR STEARNS**
245 Park Avenue
New York, New York 10167
(212) 272-2000

BEAR, STEARNS SECURITIES
ONE METROTECH CENTER
BROOKLYN, NEW YORK 11201
(212)

| Account | A.E. | Trailing | Period Ending | Last Statement | Page |
|---|---|---|---|---|---|
| 224-07229 | 512 | | 12/31/93 | 11/26/93 | 1 of 3 |

**Your Account Executive** — **Telephone**
FISHMAN, MELVIN — 212-272-

ANGELA MOTTAHEDEH TTEE FBO
EDWARD LAVI EDMUND LAVI &
ANGELA MOTTAHEDEH UAD 11/8/93
31 STIRRUP DRIVE
BROOKVILLE NY 11545

**Important Notice**

IF ANY INFORMATION REGARDING 1993
INTEREST, DIVIDENDS, MISCELLANEOUS
INCOME, GROSS PROCEEDS OR ORIGINAL ISSUE
DISCOUNT IS REQUIRED TO BE REPORTED TO
THE IRS FOR THIS ACCOUNT, A CONSOLIDATED
1099 FORM WILL BE MAILED TO YOU BY JAN
31, 1994.

## Financial Summary

Market Value of Securities:

| | Long | Short |
|---|---|---|
| Equities | $960,868 | $0 |
| Bonds | 372,740 | 0 |
| Options | 0 | 0 |
| Other | 0 | 0 |
| Security Totals | $1,333,608 | $0 |

Total Value of Securities This Period
Net Amount Due
Net Equity This Period
Net Equity Last Month

## Cash Balance Summary

| Cash Balances | Opening | Closing |
|---|---|---|
| Cash | $1,200.05 | $0. |
| Margin | 49,520.45- | 771,897. |
| Net Account Bal. | 948,720.40- | 771,897. |

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Dividends | $1,840.00 | $2,160. |
| Credit Balance Int. | 0.00 | 13. |
| U.S. Govt. Bond Int. | 1,687.50 | 5,156. |
| Govt. Agency Int. | 1,150.00 | 1,150. |
| Corp. Bond Int. | 1,125.00 | 1,125. |
| Total | $5,822.50 | $9,604. |

Margin Interest Paid | $2,844.99- | $2,214.

## TRANSACTIONS SETTLING THIS PERIOD

| Date Mo/Day | Account Type | Transaction Type/Quantity | Description | Price/Rate | Amount Debit/Credit |
|---|---|---|---|---|---|
| **Dividends And Interest** | | | | | |
| 11/30 | MARGIN | INTEREST | U S TREASURY NOTE SER M-1997<br>F/C 11/30/92<br>DUE 09/30/1997    6.750<br>CPN INT ON    50,000 BND | | 1,687 |
| 12/01 | MARGIN | DIVIDEND | WESTINGHOUSE ELECTRIC CORP<br>CASH DIV  ON  10000 SHS<br>REC 11/06/93 PAY 12/01/93 | .1000 | 1,000 |
| 12/01 | MARGIN | INTEREST | FORD CAPITAL B V NOTES<br>DUE 06/01/1996    9.000<br>REC INT   ON  25000 BND<br>REC 11/15/93 PAY 12/01/93 | | 1,125 |
| 12/10 | MARGIN | INTEREST | FEDERAL NATL MTG ASSN DEBS<br>SER SM 97-C<br>DUE 06/10/1997    9.200<br>12/10 INT PYMT | | 1,150 |

PLEASE REPORT ANY DIFFERENCE OR NON-RECEIPT OF CHECKS OR STOCKS INDICATED AS DELIVERED TO
YOU TO CLIENT SERVICES AT 800-634-1428) OR WRITE TO CLIENT SERVICES AT
BEAR, STEARNS SECURITIES CORP. ONE METROTECH CENTER NORTH, BROOKLYN, N.Y. 11201-3859

THIS SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY. IT IS NOT INTENDED AS A TAX DOCUMENT.
THIS STATEMENT SHOULD BE RETAINED FOR YOUR RECORDS                SEE REVERSE SIDE FOR IMPORTANT INFORMATION

**BEAR STEARNS**

Bear, Stearns & Co. Inc.
245 Park Avenue
New York, New York 10167
(212) 272-2000

WHOLLY OWNED SUBSIDIARY
BEAR, STEARNS SECURITIES CORP.
ONE METROTECH CENTER NORTH
BROOKLYN, NEW YORK 11201
(212) 272-

| Account | A/E # | Tax ID # | Period Ending | Last Statement | Pages |
| --- | --- | --- | --- | --- | --- |
| 224-07229 | 512 | | 12/31/93 | 11/26/93 | 2 of 3 |

ANGELA MOTTAHEDEH TTEE FBO

## TRANSACTIONS SETTLING THIS PERIOD

| Date mm/day | Account Type | Transaction Type/Quantity | Description | Price/Rate | Net Amount Debit/Credit |
| --- | --- | --- | --- | --- | --- |
| **Dividends And Interest** | | | | | |
| 12/13 | MARGIN | DIVIDEND | TIME WARNER INC CASH DIV ON 2000 SHS REC 12/01/93 PAY 12/13/93 | .0800 | 160 |
| 12/14 | MARGIN | DIVIDEND | BANKAMERICA CORP W/RTS TO PUR P/STK UNDER CERT CIRCUMSTANCES CASH DIV ON 2000 SHS REC 11/23/93 PAY 12/14/93 | .3500 | 700 |
| 12/21 | MARGIN | INTEREST | INT FR 11/21 THRU12/20 8 7 % BAL 769,552 AVBAL 68,254 | | 398.15 |
| 12/31 | MARGIN | INTEREST | INT FR 12/21 THRU12/31 7 % BAL 769,951 AVBAL 769,951 | | 1,646.84 |
| **Funds Received And Issued** | | | | | |
| 12/20 | MARGIN | FND WIRED | IDA# M8632244 FNDS WIRED TO SIGNET BANK MARYLAND AC# 4400249100 FD#04619 | | 729,000.00 |
| **Miscellaneous** | | | | | |
| 11/30 | MARGIN | JOURNAL | FROM 224-00613 CHPT JNL 10/20 | | 2,3 |
| 12/16 | CASH | JOURNAL | INTRA ACCOUNT TRANSFER | | 1,200.05 |
| 12/16 | MARGIN | JOURNAL | INTRA ACCOUNT TRANSFER | | 1,20 |

## PORTFOLIO POSITIONS

| Account Type | Quantity | Description | Symbol/Cusip | Price | Market Value | Estimated Annual % Income |
| --- | --- | --- | --- | --- | --- | --- |
| **Equities/Options** | | | | | | |
| MARGIN | 2,000 | BANKAMERICA CORP W/RTS TO PUR P/STK UNDER CERT CIRCUMSTANCES | BAC | 46.375 | 92,750 | 1.400 |
| MARGIN | 2,000 | BEAR STEARNS COMPANIES INC | BSC | 21.875 | 43,750 | .600 |
| MARGIN | 2,000 | BRISTOL MYERS SQUIBB CO W/RTS TO PUR P/STK UNDER CERT CIRCUMSTANCES | BMY | 58.125 | 116,250 | 2.920 |
| MARGIN | 2,000 | GENERAL MOTORS CORP=CL E | GME | 29.250 | 58,500 | .400 |
| MARGIN | 5,000 | ***GLAXO HOLDINGS PLC SPONSORED ADR | GLX | 20.875 | 104,375 | .702 |
| MARGIN | 2,500 | PAN AM CORP | 697757102 | .547 | 1,368 | |
| MARGIN | 2,500 | PHILIP MORRIS COMPANIES INC W/RTS TO PUR C/STK UNDER CERT CIRCUMSTANCE | MO | 55.750 | 139,375 | 2.600 |
| MARGIN | 1,000 | ***TELEFONOS DE MEXICO SA DE CV=SPONS ADR REPSTG 20 L SHS | TMX | 67.500 | 67,500 | .962 |
| MARGIN | 2,000 | TIME WARNER INC | TWX | 44.250 | 88,500 | .320 |
| MARGIN | 6,500 | TRANSMEDIA NETWORK INC NEW | TMNI | 16.500 | 107,250 | .020 |
| MARGIN | 10,000 | WESTINGHOUSE ELECTRIC CORP | WX | 14.125 | 141,250 | .400 |
| | | MARKET VALUE-EQUITIES | | | 95 | |

# BEAR STEARNS

Bear, ■ is a Co. Inc. ■
245 Park Avenue
New York, New York 10167
(212) 272-2000

BEAR, STEARNS SECURITIES
ONE METROTECH CENTER
BROOKLYN, NEW YORK
Rt

| Account # | | | Period Ending | | 3 of 3 |
|---|---|---|---|---|---|
| 224-87229 | 512 | | 12/31/93 | 11/26/93 | 3 of 3 |

ANGELA MOTTAHEDEH TTEE FBO

## PORTFOLIO POSITIONS

### Corporate Bonds

| Account Type | Amount | Description | Cusip | Price | Market Value | Rate |
|---|---|---|---|---|---|---|
| MARGIN | 25,000 | FORD CAPITAL B V NOTES DUE 06/01/1996  9.000% JD     01 RATING: MOODY A2    S+P A | 345220AG2 | 109.652 | 27,413 | 9.000% |
| MARGIN | 25,000 | COCA COLA CO NT F/C 3/15/92 DUE 09/15/1998  7.875% MS    15 RATING: MOODY AA3  S+P AA | 191216AC4 | 109.537 | 27,384 | 7.875% |
| | | MARKET VALUE-CORPORATE BONDS | | | | |

### Government And Agency Obligations

| Account Type | Amount | Description | Cusip | Price | Market Value | Rate |
|---|---|---|---|---|---|---|
| MARGIN | 25,000 | U S TREASURY NOTES SER G-1994 DUE 10/15/1994  9.500% AO    15 | 912827VK5 | 104.438 | 26,110 | 9.500% |
| MARGIN | 25,000 | US TREASURY NOTE SER D-95 DUE 11/15/1995  9.500% MN    15 | 912827SY9 | 109.531 | 27,383 | 9.500% |
| MARGIN | 50,000 | U S TREASURY NOTE SER K-1996 DUE 01/31/1996  7.500% JJ    31 | 912827ZV7 | 106.344 | 53,172 | 7.500% |
| MARGIN | 50,000 | U S TREASURY NOTE SER G-96 DUE 07/15/1996  7.875% JJ    15 | 912827XT4 | 108.125 | 54,063 | 7.875% |
| MARGIN | 50,000 | U S TREASURY NOTE SER M-1997 F/C 11/30/92 DUE 05/31/1997  6.750% MN    31 | 912827F64 | 106.219 | 53,110 | 6.750% |
| MARGIN | 25,000 | FEDERAL NATL MTG ASSN DEBS SER SM 97-C DUE 06/10/1997  9.200% JD    10 RATING: MOODY AAA | 313586XO9 | 113.188 | 28,297 | 9.200% |
| MARGIN | 15,000 | U S TREASURY NOTE SER B-97 DUE 08/15/1997  8.625% FA    15 | 912827VE9 | 112.469 | 16,870 | 8.625% |
| MARGIN | 50,000 | US TREASURY NOTE SER B-99 DUE 05/15/1999  9.125% MN    15 | 912827XN7 | 117.875 | 58,938 | 9.125% |
| | | MARKET VALUE-GOVERNMENT OBLIGATIONS | | | | |
| | | ****** YOUR PRICED SECURITIES VALUE ****** | | | | |

---

THERE ARE NO "STOP LOSS" ORDERS OR OTHER PENDING
BUY OR SELL OPEN ORDERS ON FILE FOR YOUR ACCOUNT.

*** END OF STAT

EXHIBIT

G

This Agreement made this 26 day of June, 1997, between Parviz Lavi, the Borrower and Stockholder (hereinafter referred to as "Lavi" and Angela Mottahedeh, Trustee u/a dated November 8, 1993, the Lender (hereinafter referred to as "Trustee"), sets forth the agreement of the parties as follows:

1. Lavi is indebted to Trustee in the amount of $1,140,000.00 plus interest of 10% from December 31, 1993 which the parties agree is still valid and outstanding.

2. Lavi is the owner of shares in Cedarbrook Country Club which have substantial value and which are unencumbered, freely transferrable by Lavi and to which no one has a claim to as of this date.

3. Lavi hereby grants to Trustee by separate document an irrevocable proxy and stock power over 19 shares of Cedarbrook Country Club with the power to have those shares transferred to the Trustee if the loan is not paid back prior to December 31, 1998 or if Lavi defaults thereon. This is separate and apart from any other remedies which Trustee may have in connection with such loan.

4. Trustee agrees not to transfer such shares or vote the same in any manner inconsistent with the rights of Lavi provided he is not in default or pays the loan on the due date.

5. It is the intention of the parties that the proxy should be filed with the party at Cedarbrook Country Club who is required to have notice of any transfer of ownership or encumbrance on shares of Cedarbrook Country Club and Trustee agrees to do so upon execution of the same.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the date written above.

_____        26 june 1997
Parviz Lavi

_____
Angela Mottahedeh

50009.1

EXHIBIT

H

AGREEMENT made June ☐ , 1998 between Parviz Lavi by Madeleine Lavi, his attorney-in-fact (hereinafter "Transferor"), residing at 10 Auserehl Court. Huntington, New York, as party of the first part, and Angela Mottahedeh (hereinafter "Transferee"), residing at 31 Stirrup Drive, Brookville, New York, as party of the second part.

WHEREAS, both parties acknowledge that the Transferor is indebted to the Transferee as Trustee of a certain Trust dated November 8, 1993 (the "Trust"), in the amount of ONE MILLION ONE HUNDRED AND FORTY THOUSAND ($1,140,000) DOLLARS plus interest at the rate of ten (10%) percent per annum from December 31, 1993, on account of a loan (the "Loan") made to the Transferor from the proceeds of the Trust, and both parties acknowledge that the Transferor owns nineteen (19) shares of the capital stock of Old Cedar Development Corporation which are unencumbered and transferable by the Transferor to his children,

NOW, therefore, the parties agree as follows:

1.     The Transferor agrees to convey, transfer and assign his nineteen shares in Old Cedar Development Corporation to the Transferee. to be held in trust by the Transferee for the beneficiaries of the Trust dated November 8, 1993 in consideration for the cancellation of the Loan and the Transferee's forgiveness of the debt owed by the Transferor to the Trust.

2.     The Transferee hereby agrees to accept the 19 shares in satisfaction of the Loan, and agrees to hold the shares in trust for the beneficiaries of the Trust. to distribute the income/dividends of the shares pursuant to the terms of the Trust and. upon the death of the Transferor, to convey/transfer the shares pursuant to the terms of the Trust.

IN WITNESS WHEREOF the parties have hereunto set their hands the day and year first above written.

_____                    _____
PARVIZ LAVI by MADELEINE                                       ANGELA MOTTAHEDEH
LAVI, his attorney-in-fact

EXHIBIT

I

63

C 229X—Assignment Separate from Certificate.
Signature Guaranteed.

JULIUS BLUMBERG. INC., LAW BLANK PUBLISHERS

# STOCK POWER

FOR VALUE RECEIVED____ PARVIZ LAVI by his attorney-in-fact Madeleine Lavi

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE

hereby sell, assign and transfer unto_____ Angela Mottahedeh, as Trus

Residing at 31 Stirrup Drive, Brookville, NY  11545

(___19___) Shares of the_____ Capital Stock of Old Cedar

Development Corporation_____standing in my(our) name(s)

on the books of said Corporation represented by Certificate(s) No(s) 17 as of June 1, 1998 including a
dividends and distributions with respect to the Shares since June 1, 1998

herewith, and do hereby irrevocably constitute and appoint____ Angela Mottahedeh

MEDALLION GUARANTEED
THE BANK OF NEW YORK

said stock on the books of said Corporation with full power of substitution in the premise AUTHORIZED SIGNATURE
X 0809012

( 657 )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM℠

Dated June 2 , 1998

*Parviz Lavi by Madeleine Lavi*
Parviz Lavi by his attorney-in-fact
Madeleine Lavi his attorney-in-fact

In presence of

ELIZABETH MURATORE
Notary Public, State of New York
No. 41-4656415
Qualified in Queens County
Term Expires March 30, 1999

Notarize Madeleine Lavi
Signature only

Signature guaranteed,

EXHIBIT

J

# TOMPKINS & KOKKORIS

Attorneys at Law
292 Fifth Avenue
New York, New York  10001

Christopher Tompkins
Constantine (Dean) Kokkoris
Mark D. Goodwin, Of Counsel

Telephone: (212) 714-3524
Telefax:   (212) 613-2269*
*Not for service of papers

June 5, 1998

**VIA FACSIMILE: (212) 949-6943**
Jacob S. Shakarchy, Esq.
Cox Buchannan Padmore & Shakarchy, Esqs.
630 Third Avenue
New York, New York 10017

Re:   Transfer of Parviz Lavi's shares of Old Cedar Development Corp.

Dear Mr. Shakarchy:

I represent Parviz Lavi with respect to the above-referenced transaction. Enclosed please find copies of the appropriate documents evidencing a transfer of Parviz Lavi's nineteen (19) shares of Old Cedar Development Corporation to his daughter Angela Mottahedeh, and authorizing Old Cedar to register the transfer on the corporate books and issue a new share certificate to Ms. Mottahedeh.

The transfer was executed by Madeleine Lavi, Parviz Lavi's wife and his attorney-in-fact for stock transactions (see copy of power of attorney enclosed) and her signature was guaranteed by the Bank of New York (see copy of stock power enclosed). At the time of the transfer, Parviz Lavi was alive and well and he had not revoked the power of attorney he executed, but was being detained in Virginia pending a criminal trial. His original share certificate has been lost and he is thus authorizing the corporation to issue a new certificate representing his 19 shares to his daughter, pursuant to section 508 (e) of the New York Business Corporation Law (see authorization to issue new certificate enclosed).

This transfer complies with the Subscriber's and Stockholder's Agreement for Old Cedar dated July 20, 1987, (copy enclosed) in particular, with paragraph 8(a) of that agreement. This transfer will not affect the corporation's subchapter "S" status under the Internal Revenue Code.

I urge you to see to it that the corporation registers the transfer of shares in its books and issues the new certificates as soon as possible; any delay in the official transfer of the shares may result in a substantial loss to Parviz Lavi and Angela Mottahedeh, and may also result in liability to Old Cedar Development Corporation under section 8-401 (b) of the New York Uniform Commercial Code. If you have any questions, please feel free to call. Thank you for your prompt attention to this matter.

Sincerely,

DEAN KOKKORIS

Original w/ Enclosures via First Class Mail
cc: Parviz Lavi